IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SYLVIA WIGTON, AUDREY L. GORGONZOLA, GAIL G. HUDSON, GATHRYN DAANE, DOLORES VASSALLUZZO, MARY JANE THOMAS and THOMAS C. MARCIN, on behalf of themselves and other individuals similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELAINE KAPLAN, Director of the United States Office of Personnel Management,<br><br>Defendant. | Civil Action No. 2:10-cv-01768<br><br>Judge Mark R. Hornak |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiffs, a group of registered nurses ("RNs") formerly employed by the Department of Veterans Affairs ("VA"), brought this action seeking declaratory and injunctive relief against the Defendant, the United States Office of Personnel Management ("OPM"), in connection with a recalculation of their retirement annuities they allege, and OPM concedes, that OPM is obligated to perform under the retroactive application of the Veterans Affairs Health Care Programs Enhancement Act ("Enhancement Act"), Pub. L. No. 107-135, Title I, § 132, 115 Stat. 2454 (2002).

Pending before the Court are two Motions – OPM's Motion to Dismiss Plaintiffs' First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), and Plaintiffs' Motion for Class Certification under Fed. R. Civ. P. 23. The Court has carefully considered Plaintiffs' First Amended Complaint, ECF No. 81; Defendant's Motion to Dismiss, ECF No. 142, and Brief in Support, ECF No. 144; Plaintiffs' Brief in Opposition, ECF No. 151; and Defendant's Reply

Brief, ECF No. 155; as well as Plaintiffs' Motion for Class Certification, ECF No. 133, and Brief in Support, ECF No. 131; Defendant's Brief in Opposition, ECF No. 143; and Plaintiffs' Reply Brief, ECF No. 152; and Plaintiffs' Memorandum on Justiciability, ECF No. 141; Defendant's Response, ECF No. 150; and Plaintiffs' Reply Brief, ECF No. 156.

The facts and background of this case will not be restated here, as they were extensively related by the Court in its Opinion on the Defendant's previous Rule 12(b)(1) Motion to Dismiss. *See Wigton v. Berry*, 949 F.Supp.2d 616 (W.D. Pa. 2013). There, the Court held that it had subject matter jurisdiction only as to the relief sought in the Plaintiffs' claim that OPM failed to notify individuals arguably entitled to, but otherwise unaware of their eligibility for, a recalculation of their annuities. *Id.* at 631-37. The Court set out in detail the reasons why it was without jurisdiction as to any issue going to the merits of any claim for substantive relief. *Id.* at 624-32.

The Court also observed in its Opinion that because it only had jurisdiction over the narrow issue of whether OPM was obligated to notify annuitants potentially eligible for recalculation, and OPM apparently now concedes that it must identify and notify such annuitants (and, seemingly, their successors in interest), and claims it was attempting to do so before the Court granted Plaintiffs' Motion under Fed. R. Civ. P. 23(d)(1) to preclude OPM from such action[1], this case may present a threshold question of justiciability. *Id.* at 640-41. The parties subsequently briefed the Court on that issue, both in their papers concerning OPM's Motion to Dismiss and in separate memoranda devoted to the question of justiciability. The Court will examine the justiciability question first to determine whether it may proceed further.

---

[1] The Court granted Plaintiffs' motion to preclude OPM from having direct contact with named plaintiffs and putative class members, ECF No. 75, and then fine-tuned its ruling in subsequent Orders, confining it to the subject matter of this litigation, ECF No. 87, and authorizing OPM to recalculate annuities or other retirement benefits of any individuals who were or could be putative class members and who contacted OPM requesting action unrelated to this litigation that affected the amount of annuity, survivor annuity, or other retirement benefits, ECF No. 119. Collectively, the Court refers to those Orders as its "Rule 23(d)(1) Orders."

2

## I. Motion to Dismiss

OPM makes two primary justiciability-based arguments for dismissal. First, it contends that the named Plaintiffs no longer have standing to maintain their action. The issue of constitutional standing is invoked where

> [T]he plaintiff's ability to fall within the class definition not only depends upon whether the plaintiff sustained the same injury as the class, but also upon whether the plaintiff sustained any injury at all...To have constitutional standing, "[a] plaintiff must always have suffered 'a distinct and palpable injury to himself' that is likely to be redressed if the requested relief is granted." *Gladstone Realtors v. Vill. of Belwood*, 441 U.S. 91, 100 (1979) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 n.22 (1976)). "It is the fact, clearly established, of injury to the complainant – not to others – which justifies judicial intervention." *McCabe v. Atchison, Topeka, & Santa Fe Ry. Co.*, 235 U.S. 151, 162 (1914). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself of any other member of the class." *O'Shea v. Littleton*, 414 US. 488, 494 (1974).

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360-61 (3d Cir. 2013). Plaintiffs must prove three elements to show constitutional standing:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural or hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly...trace[able] to the challenged action of the defendant, and not...th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). "While the proof required to establish standing increases as the suit proceeds...the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal citations omitted).

OPM contends that the named Plaintiffs lack standing because their only remaining claim is for notice of their right to recalculated annuities, and they have necessarily had notice of that

3

right since before they initiated their suit. However, notice obtained from common knowledge or third parties does not relieve the government of its due process notice obligations. *See Jones v. Flowers*, 547 U.S. 220, 232-33 (2006); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983). It is a proper inference that the named Plaintiffs at least believed they might be entitled to a recalculation to file suit for such relief, but at that time, OPM had not provided them with adequate and complete notice of their rights under the Enhancement Act and the *Lippman* decision. Accordingly, when they sued, they had an actual alleged injury to their right to notice. As pled, that injury was directly caused by OPM's failure to identify them and send them notice of their eligibility for a recalculation.

Finally, at the time Plaintiffs sued, although OPM had conceded that the *Lippman* decision was universally binding and its application was required by law, OPM was only recalculating the benefits of qualifying RNs who affirmatively requested such recalculation, and was neither identifying eligible RNs nor notifying them of their ability to seek a recalculation. *See Wigton*, 949 F.Supp.2d at 619-20.[2] Because the Court has jurisdiction to order OPM to give notice to the named Plaintiffs and the proposed class, their injuries at the time of suit are redressable by court-ordered injunctive relief.

OPM further argues that prudential standing considerations advise against the Court's exercise of jurisdiction over the case, because it now stands at the ready to provide notice to the named Plaintiffs and the members of the putative class if the Court lifts its Rule 23(d)(1) Orders. OPM has also filed a Notice with the Court describing how it would do so.[3] *See* ECF No. 140.

---

[2] A process which the Court described as OPM's own version of "double secret probation." *Wigton*, 949 F.Supp.2d at 632 n.19.

[3] In its Notice to the Court, OPM details the actions it represents it would take in identifying and providing notice to recalculation-eligible annuitants. These include posting a notice on the official OPM website, displaying the notice on OPM's official social media sites, contacting organizations that serve retired federal employees about publicizing the notice, submitting a request to publish the notice in the Federal Register, sending the notice to the VA for

4

Prudential standing encompasses "at least three broad principles: 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014) (internal citation omitted). However, with regard to one party asserting the claims of another, "the prohibition on third party standing...'is not invariable and our jurisprudence recognizes third-party standing under certain circumstances.'" *In re Majestic Star Casino, LLC*, 716 F.3d 736, 748 (3d Cir. 2013) (quoting *Pa. Psychiatric Soc'y v. Green Spring Health Servs. Inc.*, 280 F.3d 278, 288 (3d Cir. 2002)). "The principles animating...prudential [standing] concerns are not subverted if the third party is hindered from asserting its own rights and shares an identity of interests with the plaintiff." *Id* at 748-49.

As the Court recognized in its prior Opinion, "[t]hese circumstances appear to be met under the facts of this case: claims brought by a group of individuals who have suffered injury (failure to receive annuities), and share an identity of interests (retroactive recalculation of annuities under the Enhancement Act), with those who have an inherent obstacle from pursuing their own claims." *Wigton*, 949 F.Supp.2d at 641 n.33. OPM has offered nothing to alter the Court's conclusion. It argues that because it agrees that it owes the named Plaintiffs and the proposed class notice and is ready to independently provide it, the parties lack sufficient adversity. That is far from accurate – as borne out by the record, the parties still strongly disagree on the form and plan for dissemination of notice and whether OPM should be allowed to provide it only on its own terms. Further, the Supreme Court has recently reaffirmed that "a

---

posting, and sending letters to active annuitants identified as eligible by the Central Personnel Data File and the electronic Annuity Roll. ECF No. 140, at ¶¶ 5-9. That document also describes the proposed contents of the notice, and how OPM and Retirement Services would go about the process of recalculating and paying annuities to putative class members. *Id.* at ¶ 10.

federal court's 'obligation' to hear and decide" cases within its jurisdiction "is 'virtually unflagging.'" *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584, 591 (2013) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Accordingly, the Court concludes that the named Plaintiffs have standing to seek the relief available to them from this Court on behalf of themselves and the proposed class.

OPM also argues that the case is non-justiciable on mootness grounds. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). According to OPM, if not for the Court's Rule 23(d)(1) Orders, it would have given complete relief (on the only issue as to which this Court has jurisdiction) over two years ago to all putative class members in its form of notice, extinguishing any remaining adversity between the parties and removing any personal stake the named Plaintiffs or putative class members could have in this case in this Court. *Id.* at 22. OPM insists that this course of action would have prejudiced no one and would be in the best interests of potential class members. *Id.* at 34.

Plaintiffs disagree. They contend that the fact that OPM had then or now has offered to send some notice to some putative class members does not moot this case, because voluntary cessation of challenged conduct does not deprive a federal court of jurisdiction to determine the legality of that conduct, unless there is no reasonable expectation that the alleged violation will recur. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000). The party asserting mootness due to voluntary compliance bears the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190. Plaintiffs aver that OPM has not met that burden by simply promising to provide adequate notice on its own, given OPM's purported "history of resistance

6

to paying benefits" and "clandestine and unexplained efforts post-litigation to reverse its prior policies" during this litigation. ECF No. 151 at 9.

Indeed, throughout Plaintiffs' papers are warnings that in this litigation, OPM has a "long and troubled history of intransigence, resistance, and willful refusal to identify, notify or pay [c]lass members even after conceding their entitlement." ECF No. 156 at 13. In this regard, Plaintiffs liken OPM's conduct to that of Butch Cassidy and the Sundance Kid – "OPM does only what it has to do – and no more – to stay one step ahead of the posse," and contend that if the Court lifts its Rule 23(d)(1) Orders, OPM may default on its promise to provide notice or botch the job. *Id.* at 14. They specifically point to the Declaration of Kenneth J. Zawodny, Jr., of OPM ("Zawodny Declaration"), filed in support of OPM's Notice. *See* ECF No. 140 at 2-7. Mr. Zawodny declares that OPM will carry out the notice processes it commits to only if "there are no unexpected changes to Retirements Services' operating budget or current staffing levels." *Id.* at 3. While the Court does not necessarily buy into Plaintiffs' cinematically enhanced worries, it cannot help but note that OPM's post-*Lippman* silence prior to the filing of this case, coupled with its hedging of its bets in the Zawodny Declaration, indicates that Plaintiffs' silver screen metaphors are not entirely fanciful. Further, the Third Circuit has held that courts should give extra scrutiny to voluntary changes made after litigation has commenced, as is the case here. *Burns v. Pa. Dep't of Correction*, 544 F.3d 279, 284 (3d Cir. 2008) (citing *DeJohn v. Temple Univ.*, 537 F.3d 301, 306-07 (3d Cir. 2008)).

On that basis, it is plain that OPM has not met its heavy burden to demonstrate the lack of a reasonable expectation that it could return to its alleged "old ways." OPM began recalculating named Plaintiffs' annuities, and directly sending them notice of its actions, only after this litigation began. A logical inference could be drawn from the timing of the change in OPM's behavior that its actions were caused by the initiation of the litigation itself. Additionally, OPM

7

cannot point to anything other than its post-litigation offer to provide its flavor of notice as proof that the events alleged by Plaintiffs would not recur in the future. The Court therefore concludes that the case continues to present a live controversy.[4] Accordingly, the Court will deny OPM's Motion to Dismiss and proceed to Plaintiffs' Motion for Class Certification.

## II. Motion for Class Certification

Plaintiffs seek to certify a class of RNs who: (1) worked part-time (less than 40 hours per week) for the VA before April 7, 1986; (2) who retired between April 7, 1986 and January 23, 2002; (3) whose annuities were calculated using a pro-rated, "High-3"[5] formula; (4) who have not requested OPM to recalculate their annuities; (5) whom OPM has not identified as eligible for recalculation and/or notified of the right to a recalculated annuity; and (6) whose annuities have not been recalculated in accordance with the Enhancement Act and OPM policy and practice since March 2009. ECF No. 130 at 5. They argue that this putative class, as defined, meets Fed. R. Civ. P. 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and that their suit falls within the type of permissible class action described by Fed. R. Civ. P. 23(b)(2), because OPM has acted or refused to act on grounds that apply generally to the class (in allegedly failing to provide notice to the class of their eligibility for

---

[4] OPM also made a truncated ripeness argument in its response to Plaintiffs' memorandum on justiciability. ECF No. 150 at 7-11. Nowhere in its papers supporting its Motion to Dismiss is that argument even hinted at. Consequently, the issue is waived. *See Warren G. v. Cumberland Cty. Sch. Dist.*, 190 F.3d 80, 84 (3d Cir. 1999). Further, the Court believes it is readily apparent from its discussion of other justiciability doctrines in this Opinion that the case is ripe, as it continues to present a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a judgment. *See Lewis v. Alexander*, 685 F.3d 325, 341 (3d Cir. 2012), *cert. denied*, 133 S.Ct. 933 (2013).

[5] According to Plaintiffs, the "High-3" formula calculates VA employees' annuities based on the average annual earnings from an employee's three highest paid years. ECF No. 130 at 10. In 1980, Congress changed the formula to pro-rate VA annuities based on the percentage of part-time work performed over an employee's career. *Id.* at 10-11. The gist of Plaintiffs' action is that they are entitled to non-pro-rated, "High-3" formulated annuities in conformity with the Enhancement Act, which Congress passed in 2002 to return the system to its pre-1980 method of giving full-time credit for part-time work. *Id.* at 11.

recalculation), so that final injunctive relief (in the form of notice to the class) is appropriate for the class as a whole.

The central tenet of OPM's objection to certification is that while a large majority of the putative class likely is unaware of their potential eligibility for recalculation (and thus are in need of exactly the notice the Plaintiffs seek), the named Plaintiffs and potentially some class members are fully aware of such eligibility. According to OPM, this factual distinction raises issues fatal to the requirements of commonality, typicality, and adequacy of representation. Additionally, OPM argues that since it has offered to identify and notify (in its own way) annuitants eligible for a recalculation, this case is not of the type contemplated by Rule 23(b)(2).

In determining whether to certify a proposed class, the Court must conduct a "rigorous analysis" into whether the class meets all of the relevant Rule 23 prerequisites. *In re Hydgrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "A class certification decision requires a thorough examination of the factual and legal allegations," *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001), and "the court's rigorous analysis may include a 'preliminary inquiry into the merits'" as necessary. *In re Hydrogen Peroxide*, 552 F.3d at 317-18 (quoting *Newton*, 259 F.3d at 166)).

### A. Rule 23(a)

#### 1. Numerosity

"There is no minimum number of members needed for a suit to proceed as a class action," but "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (internal citations omitted). Plaintiffs aver that the class would

include a large proportion of the approximately 21,000 VA nurses[6] who allegedly retired in the time frame covered by the factual allegations, and would thus likely "encompass thousands of retired nurses." ECF No. 130 at 20. OPM does not contest that. The Court therefore concludes that the numerosity requirement of Rule 23(a) would be met.

### 2. Commonality

The commonality requirement is satisfied "if the named plaintiffs share at least one common question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013). Plaintiffs must demonstrate that the claims of the proposed class members "depend upon a common contention" that is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). In order for a "contention" to constitute a "common question," it must yield the same answer with respect to each member of the proposed class. *Id.* "[E]ven a single common question will do." *Id.* at 2556.

The parties agree that the central and only remaining issue in this case is whether the class is entitled to notification of their eligibility for recalculation of their annuities. Plaintiffs contend that OPM engaged in a uniform course of conduct violative of federal law in failing to identify nurses eligible for a recalculation and notify them of such eligibility. That is a factual and legal claim common to the entire class which the Court concludes would meet the commonality requirement.

### 3. Typicality

"The concepts of typicality and commonality are closely related and often tend to merge." *Marcus*, 687 F.3d at 598 (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

---

[6] Plaintiffs reached that figure by taking the number of employees OPM has stated retired from the VA within the time period of the class allegations (approximately 74,000) and multiplying it by 29 percent, the portion it claims that nurses comprise of the employees of an average hospital. ECF No. 130 at 20.

"Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (citing *Falcon*, 457 U.S. 147, 157 (1982)). "Typicality, however, derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Id.* at 598 (internal citations omitted). To determine whether a named plaintiff is markedly different from the class as a whole, courts engage in a comparative analysis that addresses three distinct but related concerns:

> (1) The claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).

OPM argues that because the named Plaintiffs are already aware of their eligibility, and some have already received a recalculation, they are not entitled to notice and therefore do not share the requisite factual nexus with the class members who are unaware of their eligibility. The problem with OPM's argument is that it caused that issue by recalculating some of the named Plaintiffs' annuities, and directly notifying them of that, only after the Plaintiffs commenced their lawsuit against OPM and filed their initial Motion for Class Certification.[7] The Court then

---

[7] Plaintiffs filed their complaint on December 30, 2010. First Amended Complaint ("AC"), ECF No. 81, at 2. On April 28, 2011, OPM sent letters directly to the named Plaintiffs, informing them that OPM was recalculating their pensions and adjusting their monthly benefits. AC ¶ 62. On May 9, 2011, Plaintiffs initially moved for class certification. ECF No. 15. On May 10, 2011, OPM delivered checks to Plaintiffs' counsel for past due benefits.

11

entered its Rule 23(d)(1) Orders, prohibiting OPM from affirmatively providing notice or recalculations to named Plaintiffs or any putative class members.

The Third Circuit has held that when the claim of a proposed class plaintiff is resolved while a class certification motion is pending, that plaintiff is not automatically disqualified from being a class representative as long as he retains a personal stake in the outcome of the litigation. *Wilkerson v. Bowen*, 828 F.2d 117, 121 (3d Cir. 1987) (citing *Geraghty*, 445 U.S. 388 (1980)).[8] Additionally, where a concern is present that a defendant has unilaterally resolved named plaintiffs' claims in an attempt to "pick off" suitable class representatives and thwart a class action, a motion for class certification relates back to the filing of the class complaint. *Weiss v.*

---

AC ¶ 64. OPM never contacted named Plaintiffs Mary Jane Thomas and Thomas C. Marcin, who were added when the AC was filed. *Id.* ¶ 67.

[8] The Supreme Court touched on the *Geraghty* rule in *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523 (2013). There, the Court held, over Justice Kagan's vigorous dissent, *see Symczyk*, 133 S.Ct. at 1532-37 (Kagan, J., dissenting), that the claim of the named plaintiff in a collective action filed under the Fair Labor Standards Act ("FLSA") was mooted by an unaccepted offer of judgment under Fed. R. Civ. P. 68. *Id.* at 1529. This case is distinguishable from *Symczyk* on several levels.

First, the Court unequivocally held in *Symczyk* that its Rule 23 jurisprudence was inapposite to the FLSA analysis because "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Id.* For the Court, the crucial material difference between an FLSA collective action and a Rule 23 class action was that "a putative class acquires an independent legal status once it is certified under Rule 23. Under the FLSA, by contrast, 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees...who in turn become parties to a collective action only by filing written consent with the court." *Id.* at 1530. Although the Court here is only preliminarily and conditionally certifying a Rule 23 class for the limited purpose of providing notice, which is the only remedy this Court has the authority to grant in this case, it is a Rule 23 class nonetheless, certified after a rigorous analysis of the applicable Rule 23 factors that FLSA collective action classes simply are not required to meet.

Second, at the time the *Symczyk* plaintiff's claim became moot, she had not moved for certification of her collective action, and the district court had not anticipatorily ruled on the subject. *Id.* at 1530. Accordingly, there was "simply no certification decision to which respondent's claim could have related back." *Id.* Here, the named Plaintiffs moved for class certification before OPM accorded the full relief as to all Plaintiffs that the Plaintiffs sought in their Amended Complaint. More importantly, it is plain that under current Third Circuit precedent, where there is not an undue delay in moving for class certification, the motion for such certification relates back to the filing of the class complaint. *Weiss*, 385 F. 3d at 348; *see Weitzner v. Sanofi Pastuer, Inc.*, 2014 WL 956997, at *5-6 (M.D. Pa. Mar. 12, 2014), *amended*, 2014 WL 1786500 (M.D. Pa. May 5, 2014). The *Weitzner* court also recited the cavalcade of cases which have held that the *Symczyk* holding was limited to FLSA collective actions, taking the Supreme Court's statements of the non-relation to Rule 23 class claims at their word. *See Weitzner*, 2014 WL 956997 at *7. This Court concludes that for purposes of *Weiss*, there was not undue delay here when the motion for class certification was filed, and that the rule in *Weiss* remains the applicable rule of decision in these regards.

12

*Regal Collections*, 385 F.3d 337, 342-48 (3d Cir. 2004) (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980)). Here, named Plaintiffs' claims were not rendered moot by "purposive action of the defendants," which made their claims "inherently transitory." *Id.* at 349 (citing *Geraghty*, 445 U.S. at 399; *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1049-50 (5th Cir. 1981); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 983 (3d Cir. 1992)).[9] The Court thus considers the named Plaintiffs' claims as stated at the time of the First Amended Complaint, before they had received notice from OPM. From that perspective, the named Plaintiffs share the same factual circumstances as the proposed class. Additionally, they retain a personal stake in the litigation – receiving adequate notice of their annuity rights under the Enhancement Act, which they plainly still contest that OPM has not given to them or the proposed class.

OPM also argues that the named Plaintiffs are subject to the defenses of mootness and failure to exhaust administrative remedies, because they avoided seeking a recalculation for the

---

[9] *Symczyk* also addressed the Supreme Court's "inherently transitory" rationale. The *Symczyk* Court remarked that the "inherently transitory" doctrine "has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, not on the defendant's litigation strategy." The plaintiff there requested statutory damages; here the Court has held that it only has power to award injunctive relief in the form of robust notice to the class. *See Symczyk*, 133 S.Ct. at 1531. On that topic, the Court wrote, "[u]nlike claims for injunctive relief challenging ongoing conduct, a claim for damages cannot evade review; it remains live until it is settled, judicially resolved, or barred by a statute of limitations." *Id.* In this case, the Plaintiffs seek class certification precisely because OPM's professed desire to independently provide the proposed class with OPM's own form of notice – an about-face from its pre-litigation stance where it ignored the named Plaintiffs' requests for a recalculation – renders the proposed class' claims as to the permissible injunctive relief, if left unprotected by the Court's Rule 23(d)(1) Orders, so fleeting that the Court could not rule on their motion for class certification before individual interests, so defined, would expire. The *Symczyk* Court, of course, recognized the vitality of the "inherently transitory" relation back principle, 133 S. Ct. 1528, n.2, in the Rule 23 setting, and OPM's position to date gives the Court scant confidence that OPM's past or future actions did or would conclusively afford the named Plaintiffs or the proposed class members the same complete relief that this Court could by Order.

The *Symczyk* Court concluded that its holding in *Roper* "turned on a specific factual finding that the plaintiffs possessed a continuing personal economic stake in the litigation, even after the defendants' offer of judgment," and was "tethered to the unique significance of certification decisions in class-action proceedings." *Id.* That unique significance is directly in play here, and the Court has concluded that the named Plaintiffs, although they have received their economic relief (over which this Court has no jurisdiction), still maintain a personal stake in receiving the relief that this Court may grant – full and adequate notice of all of their rights under the Enhancement Act. Separately, that is also enough, pursuant to our Court of Appeals' interpretation of *Geraghty* and *Roper* in *Weiss*, 385 F.3d at 342-48, for the named Plaintiffs' claims to remain live. *See Chafin v. Chafin*, 133 S.Ct. 1017, 1023 (2013) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.") (internal citations omitted).

sole purpose of extending this case. However, the Court has already explained why OPM's mootness argument fails, and ruled in its prior Opinion that Plaintiffs' claims for notice were not covered by the CSRA's remedial scheme. *Wigton*, 949 F.Supp.2d at 636-37. Therefore, the Court concludes that the named Plaintiffs would possess the requisite typicality to represent the proposed class.

### 4. Adequacy

The final Rule 23(a) requirement is that the named Plaintiffs must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry has two components: first, it "tests the qualifications of the counsel to represent the class"; second, it seeks to "uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). OPM contends that there is a conflict of interest between the named Plaintiffs and the purported class, because OPM has sought to give the entire class notice[10] which would resolve the remaining claims, but counsel for the named Plaintiffs have refused to accept, pressing instead for a class action suit to preserve their entitlement to a large award of attorney's fees.

While lucrative attorney's fee arrangements are a potential motivator for any class action lawsuit, *see Roper*, 445 U.S. at 338-39, the named Plaintiffs have articulated a wholly legitimate reason for class certification in this case by justifiably contesting the adequacy and inclusiveness of OPM's proposed plan for providing notice. Their substantive complaints with OPM's Notice include that it does not anticipate notifying estates of deceased annuitants or designated beneficiaries, does not provide for direct notice to pre-1972 employees or contemplate follow-up

---

[10] This is not as true as OPM argues. As set out in this Opinion, *supra* n.3 and below, OPM's version of notice focuses on a bunch of website postings and notice to active annuitants only. Plaintiffs point out that this process reveals no effort to identify other likely class participants and to then provide them with specific notice. *See* ECF No. 140. On top of that is OPM's position that it would only do what it contemplates if it elects to allocate enough money and employees to that effort. That definition of "notice" does not inspire confidence in the Court that the lone act of lifting the Rule 23(d)(1) Orders would do the trick.

letters, does not address how OPM will process follow-up requests for information from notified eligible annuitants, and does not include a sample of the actual notice OPM plans to circulate.

The Court finds these complaints do hold water, as OPM's Notice indeed fails to contemplate such important and fairly obvious contingencies. Combined with the other concerns already identified by the Plaintiffs as to OPM's independent scheme for providing notice to the putative class, a reasonable explanation exists for why the named Plaintiffs persist in moving for class certification – to foreclose a reasonably foreseeable situation in which OPM, left to its own devices, fails to provide adequate and complete notice, sending this matter right back to where it is currently situated. This Court does not believe that it is legally sufficient in the context of all that has unfolded, and the defining legal rules, to conclude that simply allowing the geologic processes of time and pressure emanating from OPM-controlled notice is the appropriate manner in which to resolve this case.

As the Court noted in its previous Opinion, it has considered lifting its Rule 23(d)(1) Orders and allowing "the parties to wait and see whether the injury Plaintiffs fear (OPM neglecting its avowed duty to recalculate or notify) then actually materializes." *Wigton*, 949 F.Supp.2d at 641. However, the record has since been supplemented with OPM's proposed plan for notice, which Plaintiff accurately points out contains equivocations from OPM as to whether and when it would disseminate its proposed version of notice at all. The Court concludes that simply lifting its Rule 23(d)(1) Orders and handing the reins to OPM would not be the prudent course of action. Plaintiffs' insistence on class certification does not betray a conflict of interest, but instead demonstrates a reasoned and proper judgment on how best to protect the rights of their clients and the proposed class. OPM's argument as to adequacy is therefore without merit, and the Court concludes that requirement would also be met in this case.

## B. Rule 23(b)(2)

Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if...the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). OPM again argues that it has changed its policy and would begin providing notice to the putative class members were the Court to lift its Rule 23(d)(1) Orders, so it no longer refuses to act on grounds applicable to the proposed class.

However, as the Court has already noted, Plaintiffs' contention is that, prior to its post-litigation change of tune, OPM acted for several years on grounds broadly applicable to the putative class members in failing to identify them as eligible for a recalculation and notify them of their eligibility. Additionally, in the aftermath of the Court's prior Opinion, the only relief Plaintiffs may seek here is injunctive in nature – an order from the Court directing OPM to identify annuitants who are eligible for recalculation and to notify them of such. Therefore, the proposed class also meets the requirements for a Rule 23(b)(2) certification.

Because the proposed class meets all of the relevant Rule 23 criteria, the Court will preliminarily and conditionally certify the class for the limited purpose (and the only matter over which this Court has jurisdiction) of providing notice to the class members.[11] The Court will direct the parties to submit a proposed form of class notification and a proposed order setting forth in detail the steps they will take to identify class members and send them (or their successors in interest) notice. The Court notes that Plaintiffs and OPM have already created a roadmap for what that proposed order should look like in OPM's suggested notice plan, and in

---

[11] Preliminary or conditional certification of a class for the purpose of providing notice is routinely granted, subject to a final certification decision at the time of a fairness hearing. *See, e.g., In re Nat'l Football League Players' Concussion Injury Litig.*, 2014 WL 3054250, at *7 (E.D. Pa. July 7, 2014).

Plaintiffs' objections to OPM's proposed form of notice, contained in their brief in opposition to OPM's Motion to Dismiss, *see* ECF No. 151 at 19. The Court anticipates that the proposed Order will address those contingencies in the notification steps OPM originally identified in its Notice to the Court, ECF No. 140.

### III. Conclusion

For the foregoing reasons, Defendant OPM's Motion to Dismiss is denied, and Plaintiffs' Motion for Class Certification is granted to the extent that the Court will preliminarily and conditionally certify the proposed class, as defined in Plaintiffs' Motion for Class Certification, ECF No. 133, for the limited purpose of providing notice to the class of this lawsuit and class members' eligibility for a recalculation of their annuities in accordance with the provisions of the Enhancement Act.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: August 29, 2014

cc: All counsel of record