# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AUDREY L. GORGONZOLA, GAIL G. )
HUDSON, GATHRYN DAANE, )
DOLORES VASSALLUZZO, MARY JANE )
THOMAS and THOMAS C. MARCIN, on )
behalf of themselves and other individuals )
similarly situated, )
)                 Civil Action No. 2:10-cv-01768
        Plaintiffs,[1] )
)                 Judge Mark R. Hornak
v. )
)
KATHLEEN McGETTIGAN, Acting )
Director of the United States Office of )
Personnel Management,[2] )
)
        Defendant. )

## OPINION

**Mark R. Hornak, United States District Judge**

     The Plaintiffs in this case are a group of retired registered nurses ("RNs") who for at least

a portion of their careers worked part-time at the United States Department of Veterans Affairs

("VA"). The Defendant is the Director of the Office of Personnel Management ("OPM"), who is

now Kathleen McGettigan (Acting). The dispute centers on whether and how OPM will notify

these nurses of the increased annuity payments to which they are legally entitled.

     Motions practice around this dispute has been ongoing for years. Now pending before the

Court is another series of motions, responses, replies, and surreplies from both parties. In its

Motion for Summary Judgment, OPM takes another swing at avoiding what Plaintiffs say (and

---

[1] As discussed below, Sylvia Wigton has died and Plaintiffs have now moved to substitute another party for her. The Clerk is directed to amend the caption accordingly.

[2] The Clerk is also directed to amend the caption to reflect OPM's current Acting Director.

what OPM has previously admitted) is OPM's legal obligation to pay the nurses larger annuities. In their Motions to Allow Time for Discovery and to Amend Class Certification, Plaintiffs seek to stave off judgment against them, and in their own Motion for Summary Judgment and Motion to Modify Rule 23(d) Order, Plaintiffs seek to expedite the relief they seek (but not without also protecting their counsel fees). Plaintiffs have also moved to substitute parties because some of the original Plaintiffs have died. OPM opposes that Motion. The briefing is extensive. *See* ECF Nos. 193; 198; 206; 208; 210; 214; 216; 219; 220; 221; 224; 225; 231; 236; 248; 254; 255; 265; 266; 271; 273. After consideration of all papers and after oral argument,[3] for the reasons stated below the Court will deny OPM's Motion for Summary Judgment; grant in part Plaintiffs' Motion to Allow Time for Discovery; grant the Plaintiffs' Motion to Amend Class Certification to the extent of confirming that a class was already certified; grant the Plaintiffs' Motion to Amend Rule 23(d) Order to the extent that the Court's order will be lifted to allow OPM to contact annuitants and beneficiaries and to recalculate and pay any increased annuities and imposing certain conditions; grant Plaintiff's Motion to Substitute; and grant in part and deny in part Plaintiff's Motion for Summary Judgment.

## I.  **BACKGROUND**

The facts of this case have been set out extensively in the Court's two previous Opinions. *See Wigton v. Berry*, 949 F. Supp. 2d 616 (W.D. Pa. 2013) ("*Wigton I*"); *Wigton v. Kaplan*, No. 10-1768, 2014 WL 4272791 (W.D. Pa. Aug. 29, 2014) ("*Wigton II*"). Therefore, only a recap of the most salient points will be recited here.

The Congress passed the Department of Veterans Affairs Health Care Programs Enhancement Act of 2001 ("Enhancement Act"), Pub. L. No. 107-135, 115 Stat. 2446, which in

---

[3] After that extended argument, the parties filed still more substantive motions and responses. ECF Nos. 240, 242, 244, 247-250, 254-57, 265-67, 271, 273, which led to this Court's Order declaring "enough is enough." ECF No. 274.

short provided for all part-time work done by VA RNs prior to April 7, 1986 to be credited as full-time work, effectively increasing those nurses' annuities. *Wigton I*, 949 F. Supp. 2d at 619. OPM first took the position that the Enhancement Act was not retroactive, and therefore applied it only to nurses who retired after the bill's passage on January 23, 2002. *Id.* But after an adjudicatory proceeding before the Merit Systems Protection Board ("MSPB"), Administrative Judge Michael Rudisill decided that Congress intended the Enhancement Act to apply retroactively, so any nurse who retired after April 7, 1986, and who fit the other criteria, was entitled to a recalculated annuity. *Id.* Thereafter, OPM came to the conclusion that it would apply the Enhancement Act retroactively (the so-called "*Lippman* concession"). *Id.* at 620.

But upon OPM's realization, exemplified in that decision, that the nurses were indeed legally entitled to recalculation of their annuities, OPM seems to have had second thoughts because it decided not to tell anyone that the Enhancement Act would be applied retroactively. This meant that OPM only recalculated annuities for those nurses who somehow knew that and then happened to ask OPM to recalculate. *Id.* This was despite OPM's conclusion that it is *statutorily required* to recalculate the annuities. *See id.* at 120 n.3 (cataloguing OPM's repeated statements that the nurses are entitled to recalculated annuities under Enhancement Act, *e.g.* "OPM does not dispute that an individual is entitled to a recalculation of his/her annuity in accordance with § 132 of Pub. L. No. 107-135," ECF No. 104, at 2). This Court previously referred to OPM's "we'll do it if you ask" approach as OPM's own version of "double secret probation." *Wigton I*, 949 F. Supp. 2d at 632, n.19.

Plaintiffs filed this lawsuit seeking to harmonize OPM's stated position and its actions (or more properly, inactions) on behalf of all eligible nurses. OPM has vigorously opposed each of the Plaintiffs' claims at every turn. First, it moved to dismiss Plaintiffs' First Amended

3

Complaint on the ground that the Civil Service Reform Act provided the exclusive avenue for adjudicatory review and precluded the Plaintiffs' claims in this Court. *See* ECF No. 93. This Court, in *Wigton I*, held that it had jurisdiction over the relief Plaintiffs seek to the extent that that relief is "notification of individuals who are arguably entitled to, but otherwise unaware of, their eligibility for a post-*Lippman* recalculation in light of OPM's self-stated statutory obligation to recalculate." *Wigton I*, 949 F. Supp. 2d at 641-42. At that point, consideration of the merits of the claims, class certification, and standing issues remained. *Id.*

After still more motions and more briefing, this Court issued its next Opinion, denying yet another OPM Motion to Dismiss and granting Plaintiffs' Motion for Class Certification "for the limited purpose of providing notice to the class of this lawsuit and class members' eligibility for a recalculation of their annuities in accordance with the provisions of the Enhancement Act." *Wigton II*, 2014 WL 4272791 at *9. That brings us to where we are now: OPM for the third time asks this Court to toss the case, despite its repeated concession to this Court that the law requires what the Plaintiffs seek. The Plaintiffs in turn ask this Court to declare them the winners here and now.

## II.    **DISCUSSION**

The parties have filed a bevy of motions and the Court will dispose of each in turn. First up is OPM's Motion for Summary Judgment, ECF No. 192. Next at bat is Plaintiffs' Motion for Summary Judgment, ECF No. 247. Third in line is Plaintiffs' Motion to Allow Time for Discovery Under Rule 56(d), ECF No. 213. Fourth at the plate is Plaintiffs' Motion to Amend Class Certification Order, ECF No. 209. Finally, the Court will address a few remaining issues including class notice, Plaintiff's Motion to Modify the earlier Rule 23(d) Order, ECF No. 205,

4

Plaintiff's filed Suggestion of Death, ECF No. 240, and Plaintiff's Motion to Substitute Party, ECF No. 244.

### A. The Motions for Summary Judgment

OPM filed a Motion for Summary Judgment arguing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on Plaintiffs' Due Process and Equal Protection claims. *See* ECF No. 192. In support of that Motion, OPM submitted a Concise Statement of Material Fact[s] Not in Dispute, ECF No. 194, which contained precisely one (1) such proposed fact:

> To determine whether an individual is eligible for an additional annuity payment pursuant to the Office of Personnel Management's ("OPM") decision to apply Section 132 of the Department of Veterans Affairs Health Care Programs Enhancement Act of 2001 ("Enhancement Act"), Pub. L. No. 107-135, 115 Stat. 2466 [sic], to individuals who retired before January 23, 2002, OPM would need to undertake a review of the individual's Civil Service Retirement file and perform a recalculation. *See* dkt. No. 54-3 (Foelster Declaration) ¶¶ 22, 27.

The Plaintiffs filed a dueling Motion for Summary Judgment that relies heavily on OPM's prior statements of its own position. They argue that OPM cannot now reverse field, and that they are the ones who are entitled to judgment in their favor as a matter of law. ECF No. 247. The Plaintiffs say that OPM should be judicially estopped from disavowing its earlier statements that recognized a legal obligation to identify and notice class members. They say that OPM's differential treatment of class members (paying some of the nurses, but not others, all equally situated) facially violates Equal Protection principles. *Id.*

For the reasons set out below, the Court concludes that the Plaintiffs are entitled to judgment as a matter of law and that there are no material facts that remain in dispute as to the

Equal Protection claim. The Plaintiff's Motion will be granted as to that claim. The balance of that Motion and OPM's Motion will be denied without prejudice.

### i. Legal Standard

Rule 56 provides that a party is entitled to summary judgment if it can show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that 'affects the outcome of the suit under the governing law' and could lead a reasonable jury to return a verdict in favor of the nonmoving party." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Initially, the moving party bears the burden of demonstrating that the evidentiary record presents no genuine issue of material fact. *Willis*, 808 F.3d at 643. If it does so, the burden shifts to the nonmoving party to "identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden . . . the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643.

Where, as is the case here, the court considers dueling motions for summary judgment, inferences drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### ii. Due Process Claim

OPM says that it is entitled to judgment as a matter of law on the Plaintiffs' due process claim because Plaintiffs cannot demonstrate a property interest being deprived without due

6

process and, in the event that they could, they are not entitled to any notice of their right to a consideration of recalculation in any form. ECF No. 193. Plaintiffs respond primarily by asserting that OPM should be judicially estopped from now proclaiming that it does not, in fact, have a legal obligation to give notice to the retired, aging nurses and to recalculate their annuities. ECF No. 247, at 21. The Court concludes that OPM is not entitled to summary judgment on the Due Process claim and at the very least there remains a genuine issue of material fact that precludes such an Order.

### 1. *Property Interest*

The first step in any due process inquiry is to determine whether there has been a deprivation of life, liberty, or property. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); *Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir. 2001). OPM argues that Plaintiffs cannot demonstrate such a property interest without requiring the Court to exceed its concededly limited jurisdiction. ECF No. 193, at 15. That is because, according to OPM, the only "surviving claims pertain to 'potential,' not actual, eligibility for an increased annuity." *Id.* at 16. And forcing a determination of individual eligibility exceeds the Court's jurisdiction in the case, the argument goes, because it would require the Court to order OPM to do the recalculation (something the Court cannot do) to determine whether a particular individual is eligible. *Id.*

"Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). OPM insists that the independent sources here are the Civil Service Retirement Act ("CSRA") and 38 U.S.C. § 7426. ECF No. 193, at 16. And under those authorities, OPM says, Plaintiffs must demonstrate their entitlement

7

to immediate payment. *Id.* at 17. Therefore, OPM says it would need to review each Plaintiff's Civil Service Retirement file and then recalculate their annuity. It would also need to determine whether they are entitled to more money under Section 132. *Id.* at 18. And because this Court cannot order such a recalculation, OPM maintains that the Plaintiffs don't have a property interest, at least not one that can be vindicated here. *Id.*

The problem with that argument is that it rests on an assumption that OPM buries in a footnote: "while OPM has decided to apply Section 132 to individuals who retired before January 23, 2002, it has not taken the position, and does not agree, that *Lippman* required it to do so." *Id.* at 18 n.11.

First, it is simply incorrect to say that OPM has not taken the position that it is compelled to apply Section 132 to the individuals at issue. It has done just that plenty of times. *See, e.g.*, ECF No. 61, at 20 ("OPM does not dispute that, assuming the putative class members are determined to have the required part-time nurse service during the relevant time period, they are entitled to additional annuity and should be paid."); ECF No. 54, at 7 n.5 (arguing against the Rule 23(d) Order because it "would interfere with OPM's statutory obligations regarding annuity computations"); ECF No. 144, at 14 (describing "what [OPM] had accepted as its obligation: to pay the absent class members what they were owed"); ECF No. 150, at 7–8 ("there is . . . no dispute between the parties that the Enhancement Act is retroactive, that OPM is applying it as such, and stands at the ready to notify the putative class members that they may be entitled to additional annuity benefits under the Act."). *See Wigton I*, 949 F. Supp. 2d at 625, n.10. These are not statements of this Court. They are those of an agency of the United States Government, in and to a federal court. This federal court. The Court will take OPM at its word.[4]

---

[4] From the Court's perspective, this is a simple, direct concession of OPM's position, one the Court has repeatedly relied upon. ECF No. 128 at 12, n.10. To the extent this Court is obligated to say that it is formally invoking the

Second, while OPM may now be attempting to walk back its earlier position on whether Section 132 as a matter of law requires increased annuities, there is no question that there existed an understanding that OPM would apply Section 132 to *these* nurses. That understanding stemmed from OPM's own post-*Lippman* understanding of Section 132 as the source of a legal obligation. In the Court's view, that is sufficient to create a property interest. *See Roth*, 408 U.S. at 577.

Third, Section 132 itself supports the conclusion that Plaintiffs are likely entitled to immediate payment of increased annuities, so this Court can't (and won't) dismiss OPM's stated post-*Lippman* position as some sort of administrative lark or governmental misstep. "In computing the annuity under the applicable provision of law specified in that subsection of an individual [who retired before April 7, 1986 and worked part-time], the service . . . shall be credited as full-time service." 38 U.S.C. § 7426. To the Court, that appears to be as clear a

---

doctrine of judicial estoppel when it recognizes and applies that concession, the Court concludes it applies here. The record is replete with OPM's concession of its obligations to recalculate whether asked to do so or not (and any contrary position is irreconcilably inconsistent); for the reasons noted, OPM's efforts to dodge its admissions of such obligations have no good faith basis, and applying such an estoppel directly addresses the harm generated by OPM's shapeshifting, and no lesser sanction will address OPM's actions and their consequences on the parties, this litigation, and this Court. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003). From the Court's perspective, if that doctrine does not apply here, it probably never would.

In particular, OPM's assertions that the Court has never relied on these representations is belied by the Court's repeated references to them in the reasoning set out in its prior Opinion regarding OPM's Motion to Dismiss. ECF No. 128. OPM's assertions of "good faith" are in the Court's estimation contrary to the record, starting with OPM's election to describe its repeated reassertion of its own self-defined legal obligation as a "stray" remark, all the way through OPM's stating over and over again that it was in essence chomping at the bit to get on with the task of carrying out its legal obligation, while at the same time placing pretty much any obstacle that it could think of in the path of its doing so.

Perhaps most stunning to the Court is OPM's position that this Court should not rely on the representations of a Department of Justice lawyer as to what OPM's future actions would be regarding the payment of enhanced annuities. ECF No. 255 at 18. That OPM really wants to hold all the cards as to notice to the Plaintiffs/annuitants is evident in its record filing as to what it would do if this Court lifted the Rule 23(d) Order. In a declaration of an appropriate OPM official, OPM says that if unleashed, it would use "reasonable funds and appropriate staff" to provide such notice, but only if there are no "unexpected changes to Retirement Services' operating budget or current staffing levels." ECF No. 140 at 3. In first year Contracts class in any law school, this is known as an "illusory promise," that is a promise which provides the promisor with complete control over whether and even if it will keep its word. Taken together, OPM's persistent equivocation, its contrary statements of its own legal obligations (seemingly made to suit the arguments made in whatever motion it then has pending here), and its efforts to in essence play dodgeball with this Court add up to bad faith for these purposes by any measure.

9

congressional directive as that body can give. While it is true that under the CSRA, there is no vested right in an annuity "until the particular event happens upon which the money or part of it is to be paid," *Rafferty v. United States*, 210 F.2d 934, 936 (3d Cir. 1954), surely the identification of constitutionally-protected property interests does not turn on the inconsistent litigation positions of federal agencies as to their statutory mandates. This Court believes that the record amply demonstrates that OPM has persistently acknowledged that Section 132 facially applies retroactively to cover the Plaintiffs here.

Finally, even though this Court may not have jurisdiction to order annuity recalculations, that fact does not alter the reality that Plaintiffs have a property interest. The property interest is predicated on independent sources of law, not on the scope of this Court's power to order a direct remedy. *See Roth*, 408 U.S. at 577.

Therefore, the Court concludes that Plaintiffs have demonstrated the existence of a property interest sufficient to maintain their Due Process claim, and to bar summary judgment in OPM's favor.

### 2. *Notice*

Because the Court concludes that Plaintiffs have made out a claim that they been deprived of a protected interest (based on what OPM has repeatedly said are its legal obligations), it will now examine what process is due.

OPM's position is that Plaintiffs are not entitled to identification or notice by or from OPM, but if they just ask OPM, then OPM will recalculate their benefits. In support of that position, OPM marshals several arguments, the first of which is that publication of the Enhancement Act in the United States Code is sufficient notice of that statute's existence and effect. ECF No. 193, at 19. But that doesn't square with what OPM now claims the Enhancement

Act says more directly. Further, OPM now seems to say that it was not even clear *to OPM* that Section 132 of the Enhancement Act mandated that Plaintiffs are entitled to increased annuities (and it apparently took the *Lippman* adjudication to convince them). If the Enhancement Act's mandate was an oblique concept even to the sophisticated officials at OPM, then surely that statute can't possibly be said to have, as a matter of law, provided adequate notice to the individual retired VA nurses that they are entitled to an increased annuity.

That argument, and OPM's next one, are premised on its self-styled "decision" to recalculate annuities being classified as a legislative act.[5] But that also is not so. OPM may try to dress this up as a policy decision, but the fact is that but for the *Lippman* adjudication, it would not be applying Section 132 to Plaintiffs and would not be recalculating or paying increased annuities. That the effects reach a potentially large number of people is of no moment. This is not an "across the board" legislative judgment, *see United States v. Fla. E. Coast Rwy. Co.*, 410 U.S. 224, 244–46 (1973), rather it is the direct result of the *Lippman* adjudication. There was no legislative policy decision here. Interpreting and applying adjudicative decisions to discrete individuals is a traditionally judicial (not legislative) function. Further, because OPM has decided to recalculate annuities for some retired VA nurses and not others (based on who is lucky enough to have known to ask OPM), the action can fairly be conceptualized as the adjudication of individual eligibility that implicates individualized notice. *See Mathews v. Eldridge*, 424 U.S. 319 (1976); *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Schroeder v. Hegstrom*, 590 F. Supp. 121, 128 (D. Or. 1984).

---

[5] Individualized notice is not required for legislative acts. *See Texaco, Inc. v. Short*, 454 U.S. 516, 536 (1982) ("it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights); *Atkins v. Parker*, 472 U.S. 115, 130 (1985) ("All citizens are presumptively charged with knowledge of the law."); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 693 (3d Cir. 1980) ("Long ago, the Supreme Court decided that the protections of procedural due process do not extend to legislative actions.").

OPM also challenges the individualized nature of the notice Plaintiffs seek. ECF No. 193, at 24. It argues that publication of OPM's *Lippman* plan in the Federal Register is legally sufficient in and of itself, and that OPM is willing to so publish a notice of that decision upon lifting of the Rule 23(d) Order. *Id.* Again, that argument is premised on OPM's action being a "formal legislative rulemaking" which it is not. The *Lippman* adjudication was just that—an adjudication. And OPM's applying it to Plaintiffs here was born of that adjudication, not the issuance of a legislative rule.

Finally, whether OPM can identify and give notice to Plaintiffs without actually recalculating their annuities is a genuine issue of material fact that precludes summary judgment. OPM says that this is the state of affairs. ECF No. 104, at 3; ECF No. 54-3, at 7–8 ¶¶ 22–23. Plaintiffs, however, dispute this fact and seek discovery on it. ECF No. 214, at 8. The Court concludes there is, at the very least, a genuine dispute on what is a material fact. Importantly in Plaintiffs' favor is that there is plenty in the record to support the proposition that OPM may be able to identify most (if not all or almost all) eligible individuals without actually first recalculating their annuities. *See* ECF No. 193, at 13 (describing the review process undertaken before entry of the Rule 23(d) Order: "as part of its normal administrative operations, [OPM] undertook a review of the Civil Service retirement files for those individuals to determine *whether they were eligible for a recalculation*.") (emphasis added).

The bottom line is that OPM's contentions in these regards are fundamentally and directly contrary to its own repeatedly stated positions, and as noted above, they also run counter to settled decisional law and the record here. At this summary judgment stage, the Court cannot conclude as a matter of law that Plaintiffs are *not* entitled to notice that falls within this Court's jurisdiction. OPM's Motion to Summary Judgment will therefore be denied as to the Due

12

Process claim because Plaintiffs have demonstrated the existence of a covered property interest and they are not necessarily precluded from receiving notice of recalculation as a remedy here. The parties will be permitted to conduct discovery as to the due process claim and defenses to it.

### iii. Equal Protection Claim

OPM next argues that Plaintiffs cannot sustain their Equal Protection claim because the basis of such a claim, according to OPM's reading of the First Amended Complaint, is a benefit recalculation and the Court lacks jurisdiction over all recalculation matters. ECF No. 193, at 25. Plaintiffs do not agree. *See* ECF No. 214, at 8. Plaintiffs say it is they who should be granted summary judgment on this claim.

As an initial matter, the Court recognizes the limits of its jurisdiction in the case. *See Wigton I*, 949 F. Supp. 2d 616. But those limits are not fatal to Plaintiffs stating a viable Equal Protection claim. First, as the Court reads the First Amended Complaint, the issue of notification is plainly pled as part of the Equal Protection claim. ECF No. 50-1, at 22 ¶ 104 (under the heading Count III: Equal Protection, "By contrast, OPM will not identify, *notify*, and recalculate pensions of eligible post-*Lippman* claimants unless they specifically request recalculation.") (emphasis added). So the Court concludes that the issue of notification as pled sufficiently forms the basis for an Equal Protection claim. Second, even if the Equal Protection claim were based on recalculation alone, the Court's lack of jurisdiction over that as an ultimate remedial matter does not necessarily defeat such a claim here. Given OPM's repeated assurances that they will recalculate annuities for those who ask, and what it says is its self-recognized legal obligation to do so, the part of the case over which the Court retains jurisdiction—notification—would seem to directly relate (at least in a material part) to the asserted Equal Protection violation. Therefore,

13

the Court concludes there are no threshold jurisdictional barriers to Plaintiffs sustaining a viable Equal Protection claim.

## 1. *Treating Similarly-Situated People Differently*

The Equal Protection component of the Fifth Amendment stands at least for the proposition that persons who are similarly situated should be treated in the same manner. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305, n. 112 (3d Cir. 2016); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, (1985)). Therefore, the Court must determine whether OPM is arguably treating similarly-situated people differently.

OPM contends that it is not. ECF No. 193, at 26. Instead, with respect to identification and notice, OPM says it is "not treating Plaintiffs differently from anyone else who is similarly situated to them." *Id.* That is a lawyerly argument, but one that rests on a cramped reading of the allegations of the First Amended Complaint. Essentially, OPM argues that it has not *noticed* anyone who is eligible for an annuity recalculation. But OPM ignores the fact that it has *actually recalculated and paid* increased annuities to some of the retired VA nurses. When looking at the universe of Plaintiffs—retired VA nurses who worked part-time before April 7, 1986—that argument is fanciful. Obviously, some of the nurses have the best possible notice from OPM that they are entitled to an increased annuity—they are actually receiving one. And others, who have met the same statutory prerequisites (*i.e.*, they are retired VA nurses who worked part-time in the relevant period) do not have such direct, OPM-generated notice. Thus, it is plain that OPM is treating similarly-situated people differently with respect to identification and notice, and Plaintiffs have successfully carried their burden of showing the first element of an Equal Protection claim.

14

## 2. *Rational Basis*

Even though OPM is treating similarly-situated nurses differently, however, it could still survive an Equal Protection claim if it has a rational basis for the alleged discrimination. *See Dungan*, 252 F.3d at 674 (for governmental distinctions between classes of people not burdened fundamental constitutional rights or suspect classes, "that action does not violate the Fifth Amendment so long as it is rationally related to a legitimate government purpose."). Such classifications are "accorded [] 'strong presumption[s] of validity'" and the Government need not produce evidence to sustain their rationality.[6] *DeSousa v. Reno*, 190 F.3d 175, 184 (3d Cir. 1999) (citing *Heller v. Doe*, 509 U.S. 312, 319 (1993)). Indeed, rational basis review is a decidedly low bar for the Government to surpass, *see Cleburne*, 473 U.S. at 440 (describing the "wide latitude" afforded to the Government with respect to social and economic legislation), but here OPM has managed to trip over it.

The thrust of OPM's rational basis argument is that it has no legal obligation to identify or provide notice to any of the retired nurses. ECF No. 193, at 26. If that were true then perhaps

---

[6] That the Government need not produce some evidence supporting a decision reviewed using the "rational basis" standard is not a given. *Lvancho v. Pine-Richland S.D.*, 2017 WL 770619, *11, n.31, *16, n.42 (W.D. Pa. Feb. 27, 2017); *see also North Carolina State Conference of NAACP v. McCrory*, 2016 WL 4053033 (4th Cir. July 29, 2016) (enjoining the enforcement of voting law provisions because the Government's record evidence demonstrated their irrationality). Here, OPM really doesn't even go through the motions of setting forth a rational basis for its decision not to give notice beyond pointing out that this Court does not have jurisdiction to order recalculation and payment of enhanced annuities (an irrelevant point as to this issue) and asserting that it is "rational" for OPM to not give notice because it opposes this Court's entry of any order that allows for a fund for the payment of attorneys' fees (an argument which OPM then morphs into its reason for not giving notice). ECF No. 255 at 23-24. OPM then seems to say that the only thing holding it back is the Court's Rule 23(d) Order, one which OPM agrees should vanish—but only if it does so on OPM's terms.

Beyond the *non sequitur* nature of OPM's "rational basis" assertion is the declaration OPM offered to the Court as to what it would do if there were no Court-created Rule 23(d) limitation on its providing notice. OPM stated that it would carry out its legal obligation, that is provide notice of a right to recalculation to annuitants, if and only if OPM itself concluded that it had enough money and people to do so. ECF No. 140. What that illusory promise tells the Court is that even if any issue regarding attorneys' fees had never even been on the table, OPM would still seek to reserve for itself the authority to choose when and whether to give notice and on what terms. The Court can fathom no basis upon which to conclude that such is a "rational basis" sufficient to pass Equal Protection muster justifying the obvious differential treatment happening here.

not taking any action would be rational. But as OPM has repeatedly said, they *do* have such a legal obligation to pay enhanced benefits. OPM's entire argument boils down to its position that it will carry out that duty only if asked by an annuitant, and if asked OPM will do so readily. *See, e.g.*, ECF No. 61, at 20 ("OPM does not dispute that, assuming the putative class members are determined to have the required part-time nurse service during the relevant time period, they are entitled to additional annuity and should be paid."); ECF No. 54, at 7 n.5 (arguing against the Rule 23(d) Order because it "would interfere with OPM's statutory obligations regarding annuity computations"); ECF No. 144, at 14 (describing "what [OPM] had accepted as its obligation: to pay the absent class members what they were owed"); ECF No. 150, at 7–8 ("there is . . . no dispute between the parties that the Enhancement Act is retroactive, that OPM is applying it as such, and stands at the ready to notify the putative class members that they may be entitled to additional annuity benefits under the Act."). So its argument that OPM is paying some nurses and not others "voluntarily" and is "greatly exceed[ing] any legal obligations it has," ECF No. 193, at 27 n.17 is belied both by the *Lippman* concession and OPM's many statements in this Court in which it accepted the legal obligation it now seeks to renege.

The bottom line is that it appears that the nurses at issue in this case are legally entitled to recalculation and increased annuities. How do we know? OPM has said so, over and over and over again. What is before this Court and within its jurisdiction is whether those nurses are entitled to be told about that possibility. And as things stand now, some nurses have such notice (*i.e.*, the ones who asked for and then received enhanced annuities) and some don't (all the others). The Court can identify no rational basis for that distinction, and OPM has posited none, other than it simply wants to provide notice and the enhanced benefits it concedes are payable

16

only on its own terms.[7] As such, Plaintiffs are entitled to summary judgment as to their Equal Protection claim. OPM's Motion for Summary Judgment will be denied and the Plaintiffs' Motion for Summary Judgment will be granted to the extent that this Court concludes that OPM's dichotomy as to who does and does not get "notice" violates the Equal Protection component of the Fifth Amendment as a matter of law.

## B. The Rest of Plaintiffs' Motion for Summary Judgment/Motion to Enforce

Plaintiffs marshal several other arguments in an effort to get in this Court the ultimate relief they seek: increased annuity payments for the class. ECF No. 248, at 20–40. Among them are judicial estoppel, the alleged unlawfulness of OPM's claims under the Administrative Procedure Act ("APA"), and writ of mandamus. *Id.* OPM argues that that's all wrong and that none of those avenues lead to the Plaintiffs' desired relief. *See* ECF No. 255.

What Plaintiffs seek to sidestep, however, is this Court's previous Order concluding that it lacks jurisdiction to order recalculation and payment of increased annuities. ECF No. 129. None of the attempted end-runs around that Order change the Court's conclusion that it cannot give Plaintiffs that ultimate relief here. The application of judicial estoppel to OPM's switch of positions that would result in a decree ordering the payment of enhanced annuities might be appropriate before another tribunal (*i.e.*, the Merit System Protection Board). But without jurisdiction, neither the APA nor a writ of mandamus can get the Plaintiffs where they want to go in this Court. Therefore, except as provided above with respect to Plaintiffs' Equal Protection

---

[7] There can be no doubt from OPM's papers of record that the classification exacted by OPM was intentional and purposeful. *Doe ex rel Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 543-45 (3d Cir. 2011). Further, a close examination of OPM's contentions simply fails to reveal a relationship between OPM's "we'll recalculate only if asked" position and any legitimate governmental interest. *See Romer v. Evans*, 517 U.S. 620, 631 (1996). The Court also does not buy OPM's contention that but for the extant 23(d) Order, OPM would provide notice, in light of OPM's shifting position as to its obligation to recalculate, and its declarations that are equivocal as to its giving notice in the absence of the 23(d) Order, saying it would do so only if it was administratively feasible.

claim as to notice, the balance of the Plaintiffs' Motion to Enforce and for Summary Judgment will be denied without prejudice.

## C.     Plaintiffs' Motion to Allow Time for Discovery Under Rule 56(d)

As noted above, Plaintiffs' Motion for Summary Judgment will be granted as to their Equal Protection claim. Their Motion to Allow Time for Discovery Under Rule 56(d), ECF No. 213, which was filed in response to OPM's Motion for Summary Judgment, will be granted in part to permit discovery as to Plaintiffs' Due Process claim and the defenses to it.

## D.     Class Certification Issues

Next is the issue of class certification. The practical reality at this point is that there are many retired nurses who are getting annuities in lesser amounts than they are entitled to. OPM says it is ready and willing to begin fixing that problem so long as that happens at its own behest and not because this Court directs it, ECF No. 150, at 7–8 (OPM "stands at the ready to notify the putative class members that they may be entitled to additional annuity benefits under the Act"), and that but for the extant Rule 23(d) stay, that is exactly what OPM would now be doing. Plaintiffs' counsel, interested in securing the relief they brought this federal lawsuit to secure, moved the Court to amend its Rule 23(d) Order to so unleash OPM, ECF No. 209, but requested several conditions be attached to any such amendment—namely, a holdback for their counsel fees from some annuity payments representing retroactive amounts to be paid to annuitants, and that notice to the class members be in a Court-approved form. According to OPM, those conditions are something it will not countenance. ECF No. 216, at 4. And, the parties are not even in agreement on whether a class has been certified in the first place.

The Court will examine in appropriate detail its previous class certification Order, the impact (if any) of our Circuit's decision in *In re National Football League Players Concussion*

18

*Injury Litigation*, 775 F.3d 570 (3d Cir. 2014), and any notice to the class under Federal Rule of Civil Procedure 23(c)(2). Each will be addressed in turn.

### i. This Court's Previous Certification Decision

In its prior Order in *Wigton II*, this Court granted Plaintiffs Motion for Class Certification to the extent that the Court "preliminarily and conditionally certif[ied] a class . . . for the limited purpose of providing them notice of this lawsuit and their potential eligibility for a recalculation of their annuities . . . ." ECF No. 158. In the accompanying Opinion of the same date, ECF No. 157, the Court cited *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 309 (3d Cir. 2008) and then proceeded to engage in the prescribed "rigorous analysis" of whether the proposed class met all of the relevant Rule 23 prerequisites. *See Wigton II*, 2014 WL 4272791, at *5.

First, the Court concluded that the numerosity requirement would be met because the class would likely include a large portion of the approximately 21,000 VA nurses who retired in the relevant time period. *Id.* at *6. Second, the Court concluded there was at least one big factual and legal claim common to the entire class: OPM's failure to identify nurses legally eligible for a recalculation and to so notify them, so the commonality requirement was met. *Id.* Third, the Court concluded that the named Plaintiffs shared the same factual circumstances as the proposed class and that they retained a personal stake in the litigation. Therefore, the typicality requirement was met. Finally, the Court concluded Plaintiffs would fairly and adequately protect the interests of the class, fulfilling the final Rule 23 requirement. Thus, it is facially plain that the Court certified the class of:

> Retired nurses who were formerly employed by the Department of Veterans Affairs ("VA"):
> (1) who worked part-time for the VA (less than 40 hours per week) before April 7, 1986;

19

（2）who retired between April 7, 1986 and January 23, 2002;

（3）who annuities were calculated using a pro-rated, "High-3" formula;

（4）who have not requested OPM to recalculate their annuities;

（5）whom OPM has not identified as eligible for recalculation and/or notified of the right to a recalculated annuity; and

（6）whose annuities have not been recalculated in accordance with the Enhancement Act and OPM policy and practice since March 2009.

ECF No. 158.

That Order remains in effect and is the starting point of the Court's consideration of the parties' pending motions relating to class certification.

## ii.    In re National Football League Players Concussion Injury Litigation

Because the Court's *Wigton II* Order included the words "preliminarily and conditionally," the Court on its own ordered supplemental briefing on the issue of whether, and if so how, the Third Circuit's *In re NFL* decision affected the class certification Order in this case. ECF No. 201. In that case, our Court of Appeals expressed its disapproval of a district court using the terms "preliminary" and "conditional" as they relate to class certification:

> To be clear: "conditional certification" should not be a preferred term of art in this Circuit. District courts should not couch a ruling as providing "conditional certification" when they actually intend to issue a certification order at a later date. Instead, district courts should more appropriately note that they are conducting a "preliminary determination" regarding class certification for a settlement class in order to provide notice to absent class members and that they are reserving the certification decision for a later date. Conditional certification rulings are not contemplated under Rule 23(c)(1) and district courts always have the ability to amend and alter an order before final judgment under Rule 23(c)(1)(C). See *Hohider*, 574 F.3d at 202; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 320. Courts wishing to *actually* make a class-action certification decision at a preliminary fairness hearing should do so by issuing an order pursuant to Rule 23(c)(1) and without reference to the order being "conditional."

*In re NFL*, 775 F.3d at 583–84 (emphasis in original).

Further, the Circuit recognized that "'tentative'" or 'conditional' class-action certification orders are no longer permitted under Rule 23(c)." *Id.* at 587. Thus, the question here is whether the Court's prior class certification order was "tentative."

Plaintiffs say the *In re NFL* decision does not change anything. ECF No. 210. Basically, Plaintiffs say that *In re NFL* made clear that "tentative" and "conditional" language should not be used, so that language should be removed from this Court's Order. Further, Plaintiffs argue that such language can and should be ignored as surplusage because the Court in actuality definitively granted class certification. *Id.* at 6. They say that there was nothing tentative about it.

OPM is not so sure. According to its reading of *In re NFL*, the Third Circuit prohibited "preliminary" and "conditional" class certifications in all permutations such that "an order that purports to certify a class but describes the class as 'conditional' [like this Court's August 29, 2014 Order] does not in fact certify a class under Rule 23." ECF No. 216, at 1. OPM argues that "under *In re NFL*, the Court's prior class certification analysis would need to be reassessed in its entirety before the Court could make a firm determination as to class certification. A preliminary and conditional class certification for the limited purpose of notice by its very tentative and limited terms reflects that the full assessment necessary for an actual class certification was not undertaken." *Id.* at 2.

An examination of the *Wigton II* Opinion and the Court's recitation of its prior analysis here demonstrates that a class was and is certified in this case.[8] The "preliminarily and conditionally" language in *Wigton II* was intended by this Court to certify the class for a limited

---

[8] As a backup argument, OPM says the Court must also address Rule 23(g) factors to properly certify the class. The Court has considered all briefing relating to the work Plaintiffs' counsel have done in identifying and investigating potential claims in the action, counsels' experience in handling class actions, other complex litigation, and the types of claims asserted in this action, counsels' knowledge of the applicable law, and the resources counsel has committed and will commit to representing the class. The Court is satisfied that Plaintiffs' counsel and the class representatives meet (and already had met) the applicable Rule 23(g) criteria.

21

purpose, which is to say for the limited matters over which the Court has jurisdiction—providing substantive notice to class members. While the Court's language did not accurately predict the admonition that followed in *In re NFL*, a review of the *Wigton II* Order makes it plain that the Court actually and fully considered and applied the *In re Hydrogen Peroxide* factors and certified the class. It did not "reserve the class certification determination for a later time." *In re NFL,* 775 F.3d at 584; *Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297, 308 (3d Cir. 2016). There was nothing "tentative" about its ruling. As such, the certification Order will be amended to remove the "preliminarily and conditionally" language and this Court here and now reaffirms that certification decision.

### iii. Class Notice Under Rule 23(c)(2)

Under Federal Rule of Procedure 23(c)(2), for any (b)(1) or (b)(2) class, a court "may direct appropriate notice to the class."[9] OPM says any notice is inappropriate because it is tantamount to the relief ultimately sought by Plaintiffs. ECF No. 208, at 8.

OPM offers no authority for its proposition that notice to the class of the litigation is inappropriate when it comes close to the ultimate relief sought. The only cases cited stand for the proposition that such notice is not *required. See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559 (2011) ("[Rule] (b)(2) does not require that class members be given notice and opt-out rights"); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 253 (3d Cir. 1975) (procedural protections are "unnecessary for the homogenous (b)(2) class"). Further, as noted above, this Court *has* determined that the Plaintiffs have a winner as to their Equal Protection claim. Since

---

[9] Upon issuing *Wigton II* and its accompanying Order, the Court directed the parties to submit a proposed form of class notification, which further confirms that *Wigton II* certified a class and everybody knew it. In fact, until the Court asked for supplemental briefing as to the impact if any of *In re NFL*, OPM did not raise any doubts about what the *Wigton II* Order meant.

the only remedy this Court has jurisdiction to order is notice, OPM's contention on the issue of overlap with "ultimate relief" misses the mark at this juncture.

Rule 23(c)(2) discretionary notice is just that—discretionary. The Court will exercise its sound judicial discretion here in favor of directing notice. OPM's positions throughout this litigation with respect to whether it has a legal obligation to recalculate annuities, whether it will do it of its own accord, whether a Court Order affects such a course of action, and whether any conditions could be attached, are most generously described as wishy-washy. Given the twists and turns of OPM's positions as to its admitted legal obligation, and the effect that has had on this litigation, this Court concludes that the rights of class members to know of and effectively participate in this litigation are best protected by giving them notice of it. Simply put, who knows which way the wind will blow next at OPM headquarters or at the Department of Justice later in this litigation? The Plaintiffs are entitled to know of and to protect their interests by actively engaging in the prosecution of their claims and they need to know about this lawsuit and such claims via Rule 23(c)(2) notice. And there is no countervailing, weighty interest advanced by OPM's position, particularly in light of this Court's grant of summary judgment on Plaintiffs' Equal Protection claim. The Court concludes that notice here is in the interests of justice and will therefore order the parties to prepare a notice form consistent with this Opinion and to file a timely joint status report on the docket in this case detailing the steps taken to identify the class members and give them notice.

## E. Counsel Fees and Modification of the Rule 23(d) Order

The Court will next consider Plaintiffs' Motion to Modify the existing Rule 23(d) Order. *See* ECF Nos. 119, 205. The Rule 23(d) Order currently in place, as modified, permits OPM to recalculate annuities of putative class members who contact OPM requesting action unrelated to

23

this litigation but prohibits OPM from having any contact with putative class members related to this litigation. *See* ECF Nos. 75, 87, 119. Plaintiffs now move to modify that Order to allow OPM to "issue lump sum payments for benefits due since retirement and adjust annuities going forward for Class members . . . it identifies as entitled to recalculation under the Enhancement Act." ECF No. 205-1, at 1. However, Plaintiffs request that the modification be subject to the following conditions:

> (1) OPM must withhold 30% of the gross amount of any retroactive benefits paid for adjustments to annuities, pending determination by this Court of whether Class Counsel is entitled to a common fund fee award based on the aggregate amount of payments for benefits past due; and

> (2) OPM shall provide a mutually-agreed upon notice to each affected Class member advising them of this lawsuit, copy Class Counsel on all communications with such individuals concerning the subject matter of this lawsuit of their entitlement to benefits under the Act, and provide contact information for Class-members to Class Counsel upon request.

ECF No. 205-1, at 1-2.

Plaintiffs principally argue that this 30% holdback of any lump-sum or similar retroactive annuity payment is necessary to establish a fund to pay a possible future counsel fee award because once OPM actually pays the nurses, the Plaintiffs' lawyers will be stuck without an appropriate resource for compensation fairly earned and properly recoverable. *See* ECF No. 206, at 5–6.[10]

OPM takes a different view. *See* ECF No. 219. It objects to any Rule 23(d) restriction at all, arguing that "because recalculation and payment of annuities are no longer part of the subject matter of this case, OPM should be able to freely communicate with putative class members

---

[10] The Court notes that at an earlier juncture, it denied a similar request from Plaintiffs "without prejudice and with the understanding that . . . Plaintiffs are not prejudiced in their ability to later seek recovery of such fees, if authorized by law, from any annuitant or OPM." ECF No. 119, at 2.

regarding them." *Id.* at 5–6. Further, OPM argues that the holdback Plaintiffs request is prohibited by law because (1) the Court lacks jurisdiction over the claim that would create the fund, (2) such a holdback is barred by sovereign immunity, (3) the common fund doctrine does not apply, (4) Plaintiffs are not prevailing parties, and (5) this is not a circumstance in which an equitable, discretionary holdback is appropriate. *Id.* at 8–14.

The Court will consider each of the parties' arguments with respect to the holdback. OPM's argument that the Court lacks jurisdiction over the claim that would create the fund is well-taken to the extent that the Court cannot order OPM to pay increased annuities. *See Wigton I*, 949 F. Supp. 2d at 641-42. However, that does not necessarily deprive the Court of jurisdiction over any holdback. *See United States ex rel. Bogart v. King Pharms.*, 493 F.3d 323, 329 (3d Cir. 2007) ("Application of the common fund doctrine thus requires court control over a fund or jurisdiction over the parties.") (internal quotation marks omitted). The Court retains jurisdiction over the parties and over the notice issue so lack of jurisdiction as to the actual recalculation of benefits does not initially pose an obstacle to application of the common fund doctrine.

Plaintiffs say that under the common fund doctrine, they are entitled to a holdback because "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." ECF No. 206, at 6 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). OPM argues that a hold back would violate sovereign immunity. Plaintiffs counter that the common fund money is not actually federal (or sovereign) funds since the holdback would be from money payable to the Plaintiffs, but also that in any event Congress statutorily waived sovereign immunity in 28 U.S.C. § 2412(b): "A court may award reasonable fees and expenses of attorneys . . . in any civil action brought by or against . . . any official of the United States acting in his or her official

25

capacity . . . The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." ECF No. 206, at 9 n.5. OPM rejoins that Plaintiffs sovereign immunity argument is off base because they ask OPM to withhold money currently in the federal government's possession. ECF No. 219, at 10.

It is plain that 28 U.S.C. § 2412(b) authorizes common fund awards, so sovereign immunity does not necessarily weigh against a holdback here. *See Commonwealth of Puerto Rico v. Heckler*, 745 F.2d 709, 711 (D.C. Cir. 1984), *abrogated on other grounds by Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993).

OPM next argues that the common fund doctrine should not apply here. The common fund doctrine "allows a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Swedish Hosp. Corp.*, 1 F.3d at 1265. At its core, an award under the doctrine is an exercise of a court's equitable power and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched." *Boeing Co.*, 444 U.S. at 478. The victory Plaintiffs now pursue (and can pursue in this Court) is to notice class members first of this litigation and next of their right to possible recalculation. If upward recalculation occurs, that will certainly lead to class members receiving not only increased annuities going forward, but also a further litigation success resulting in defined payments of money representing past due amounts to class members. Plaintiffs may well prevail on their "pay larger annuities" claims, and those claims will result in discrete individuals receiving discrete, individualized benefits both going forward, but presumably also a retroactive

lump sum payment for past benefits which were not previously enhanced. It is from any such retroactive payments that a holdback is sought.

The Court concludes that in these circumstances, a holdback is both equitable and appropriate. First, such holdback should be a one-time event as to each annuitant, so any administrative burden should be modest. Second, it will not impair the amounts received by annuitants going forward. Third, it will provide a series of "common funds" for an award of counsel fees if such is later ordered, without impairing the legitimate interest of any party. Finally, here the class of beneficiaries is relatively small (at least when compared to the general public, or even all retired nurses) and is certainly identifiable. The benefits ultimately derived can be traced with accuracy, and there will necessarily be a high level of exactitude, given the precision with which OPM will ultimately calculate any retroactive payments. While there may not ultimately be absolute precision in tracking the success of Plaintiffs in this lawsuit in gaining notice of a right to recalculation to the fact of recalculation, the history of OPM's intransigence as outlined above certainly demonstrates to the Court that it is highly likely that such a connection will be demonstrated, and the success of this lawsuit will be found to have made the receipt of recalculated benefits substantially more than "slightly easier." *See In re Long-Distance Telephone Service Federal Excise Tax Refund Litigation*, 751 F.3d 629, 635 (D.C. Cir. 2014).

What does appear to be missing here is a sufficient record basis for this Court to conclude that the amount of the holdback requested by the Plaintiffs here, 30%, is appropriate, taking into account the seven (7) factor test and the lodestar method cross-check for evaluating the amount of a common fund fee award as set forth in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195, n.1 (3d Cir. 2000). The Court will therefore order that Plaintiffs' counsel file a declaration

and supporting memorandum as to the magnitude of any holdback based on a consideration of such factors.

That conclusion, however, also may not be the end of the fee story.

The Equal Access to Justice Act ("EAJA") also allows an equitable award of attorneys' fees that does not necessarily have to take the form of a common fund award or a holdback. *See* 28 U.S.C. § 2412; *Handron v. Sec. of Dep't of Health and Human Servs.*, 677 F.3d 144, 145 (3d Cir. 2012) (The EAJA "empowers parties who prevail against the government, either in an administrative proceeding or in a civil action, to collect their fees and other expenses from the government."). As OPM points out, Plaintiffs' counsel can seek fees under 28 U.S.C. § 2412(d) which *requires* an award to "prevailing parties . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." And, it does not appear that a fee award under a common fund theory and a recovery under the EAJA are mutually exclusive. *In re Long-Distance*, 751 F.3d at 635-37.

But OPM also argues that Plaintiffs will not be entitled to § 2412(d) fees because they are not "prevailing parties." ECF No. 219, at 12–14. To be prevailing parties, Plaintiffs "must obtain an enforceable judgment against [OPM] . . . or comparable relief through a consent decree." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). And OPM says they can never be prevailing parties because even if they are successful on the merits, the limited nature of this Court's jurisdiction means that the relief would not "directly benefit [class members] at the time of the judgment or settlement." ECF No. 219, at 13 n.9 (quoting *Farrar*, 506 U.S. at 111). At this juncture, the Court cannot say that Plaintiffs could *never* be prevailing parties and that EAJA fees are legally foreclosed to them. In fact, it appears quite likely that the Plaintiffs succeeding as to liability on

28

their Equal Protection claim and in securing notice for class members generates a "prevailing party" finding and an entitlement to EAJA fees.[11]

To sum up, the Court concludes that a limited common fund holdback from any retrospective payment(s) is appropriate here. Such is in the best interests of the class. The EAJA may also remain as an available avenue for Plaintiffs' counsel to seek compensation at a future date. The Court will grant Plaintiffs Motion to Modify the Rule 23(d) Order insofar as the stay in force pursuant to the Court's previous orders, ECF Nos. 75, 87, 119, is lifted to allow OPM to contact any annuitant or beneficiary and to recalculate and pay any increased annuities as well as any retroactive "catch up" payments due and owing any annuitant or beneficiary. OPM will withhold a portion of the gross amount of any retrospective payment(s), with the amount of such holdback to be set by further Order of Court, and shall hold such monies in trust, pending disposition of them as may be later ordered by this Court, for the payment of counsel fees and recoverable litigation costs.

## F.     Suggestion of Death/Motion to Substitute Party

On November 20, 2015, Plaintiffs filed a Suggestion of Death, informing all involved of the unfortunate expiration of two named Plaintiffs: Sylvia Wigton and Mary Jane Thomas. ECF No. 240. On February 17, 2016, Plaintiffs filed a Motion for Substitution of Party Under Fed. R. Civ. P. 25(a), seeking to substitute Harold P. Thomas (Mrs. Thomas' widower) for Mrs. Thomas.[12] ECF No. 244. Almost inexplicably, OPM opposed that Motion. ECF No. 254. No

---

[11] On this point Plaintiffs provide authority overlooked by OPM. For instance, "plaintiffs may be considered 'prevailing parties' if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit," *Farrar*, 506 U.S. at 109 (internal citation omitted), and "[A] 'prevailing party is one who has been awarded some relief by the court," *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 603 (2001).

[12] Plaintiffs have not filed a Motion to Substitute anyone for Sylvia Wigton so she will be dismissed from the case without prejudice. The caption has been updated accordingly.

29

fewer than thirty-five (35!) pages of briefing followed and the parties no doubt would have kept going if the Court had let them. *See* ECF No. 272, 273, 274.[13]

Federal Rule of Civil Procedure 25(a)(1) provides that "If a party dies and the claim is not extinguished, the court may order substitution of the proper party." OPM contends that Mrs. Thomas' claims were extinguished upon her death because claims for declaratory and injunctive relief generally do not survive a plaintiff's death. ECF No. 254, at 4. OPM says that Mrs. Thomas' estate would not benefit from the relief that this Court could order—namely, notice of recalculation and a potential increased annuity. *Id.* at 5. But what separates this case from those cited by OPM is that Mrs. Thomas' estate plainly *would* benefit from notice. Whether or not they are actually entitled to any increased annuity payment is a different question, but importantly for these purposes, the estate *could* be so entitled.[14] Insurance coverage for medicine, future work, future disability benefits, etc. certainly cease upon the plaintiff's death. But where the estate could be entitled to some increased annuity based on a decedent's career's work, such injunctive relief may well be appropriate. Indeed, "actions that are remedial in nature generally survive the death of a party." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248 (3d Cir. 2002).

Although Mr. Thomas himself may not be a VA nurse within the definition of the class certified by this Court, if he is her successor in interest such that he could receive any increased annuity payment, the Court believes giving him notice is likewise legally appropriate. OPM further argues that the Plaintiffs have not shown that Mr. Thomas is in fact Mrs. Thomas' successor in interest. ECF No. 254, at 7–8. While familial relationships, in and of themselves, are

---

[13] If it is not clear from the Court's July 22, 2016 Order, Plaintiffs' Motion for Leave to File a response to OPM's *surreply*, ECF No. 272, is denied.

[14] It appears to the Court that its lack of jurisdiction over substantive remedies, argued so vigorously by OPM, may well preclude OPM's opposition to this Motion. Not allowing Mr. Thomas to be substituted looks like it would be tantamount to a ruling that Mrs. Thomas' estate is *not* entitled to any increased annuity—a determination this Court cannot make one way or the other.

not always enough to designate someone as a "proper party" under Rule 25, the Court concludes that Mr. Thomas' status as Mrs. Thomas' widower, along with the proffered statement that he is the one entitled to annuity payments based on Mrs. Thomas' work at the VA[15] are enough to designate him as a "proper party" who can be substituted into this action. Plaintiff's Motion to Substitute will be granted.

*     *     *

From the Court's perspective, OPM's arguments in this Court at times border on breathtaking in their dismissiveness of OPM's own prior positions in and to this Court. To be sure, executive agencies such as OPM do not get to pick and choose when they fulfill what they themselves say are, and what certainly appear to be, their legal obligations. Notice to annuitants of an OPM-conceded right to receive Congressionally-mandated retirement benefits does not turn on whether those citizens have the knowledge or wherewithal to ask the government to pay them what the government itself says it is obligated to pay.

At its core, here is what this case is about. Congress passed a law that entitles VA nurses in Plaintiffs' situation to an increased annuity. OPM at first refused to acknowledge that the law imposed any such obligation on it. OPM later changed course (after prompting from an adjudication), but concluded that it would not tell those beneficiaries that it had changed course. OPM has since acknowledged—again and again—its duty to recalculate and pay increased annuities to retired VA nurses, but it says it will only do so for those who ask. From where the Court sits, it is striking that OPM, when faced with a self-recognized legal obligation to act by at

---

[15] It appears that Mr. Thomas is actually receiving such benefits. ECF No. 267-1, at 3. OPM acknowledged as much. ECF No. 267-2, at 2 ("According to Mrs. Thomas's retirement file, she left a survivor annuity for her surviving spouse, Harold P. Thomas."). Moreover, OPM indicated that it would have provided Mr. Thomas with the ultimate relief sought in this case (recalculation of the annuity) *but for* Mrs. Thomas' status as a Plaintiff in this litigation. ECF No. 267-3, at 2–3. Go figure.

31

least advising the Plaintiffs of the legal right that OPM has repeatedly acknowledged they have, continues to resist fulfilling that obligation, saying that it never said in and to this Court what it in fact repeatedly had said. But perhaps even more striking is OPM's insistence that it is willing to give notice and perform the recalculations at issue, but that it will not do so if it senses that it has been directed by a court of law to provide notice of the potential for recalculation. ECF No. 219, at 3 ("OPM will not voluntarily begin to make such payments if there are conditions attached to its ability to do so."), n.3 ("Defendant will not agree to condition OPM's right to continue its normal administrative operations on the awarding of what is, in essence, final relief to Plaintiffs.").

This course of events would be unsettling in any case, but it is even more so in this one. The record reveals that the Plaintiffs here are not reaching for the stars in a strained effort to receive notice of their right to benefits that are hypothetical or ethereal. Instead, they are aging and dying citizens who devoted much of their lives to caring "for him who shall have borne the battle and for his widow and orphan"[16] and whom OPM acknowledges are the specific beneficiaries of a law passed by Congress and signed by the President. That many of OPM's arguments in opposition to the Plaintiffs' claims—particularly OPM's argument in opposition to providing notice of what OPM acknowledges to be its own statutory obligations—are premised on recantations of OPM's earlier statements, legal positions, and pleadings in this federal court is all the more troubling.

## III.  CONCLUSION

For the foregoing reasons, OPM's Motion for Summary Judgment is denied; Plaintiff's Motion to Allow Time for Discovery Under Rule 56(d) is granted in part; Plaintiff's Motion to

---

[16] The text of the official motto of the Department of Veterans Affairs, taken from the Second Inaugural Address of Abraham Lincoln. *See* http://www.va.gov/opa/publications/celebrate/vamotto.pdf.

Amend Class Certification Order is granted; Plaintiff's Motion to Modify Rule 23(d) Order is granted to the extent that the stay pursuant to the Court's earlier Rule 23(d)(1) Order is lifted to allow OPM to recalculate and pay any increased annuities subject to a holdback; Plaintiffs' Motion to Enforce/Motion for Summary Judgment is granted in part and denied in part; and Plaintiffs' Motion to Substitute Party is granted.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: April 21, 2017

cc: All counsel of record